In the United States District Court
for the Northern District of Illinois

Harlis Woods-R00051
Plaintiff

vs.

Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Brian Lewis; Jann Jameson; Director of D.C.F.S in 1995; Marshall Klein in their individual capacities,
Defendants

No. 17cv8273
Judge Der-Yeghiayan
Mag. Judge Schenkier
PC 11

Jury Trial Demanded

## Complaint

1.) This is a civil action for damages, authorized by 42 USC §1983, to redress the deprivation, under color of law, of rights secured by the Constitution of the United States.

2.) Plaintiff also alleges state law tort claims arising from the same facts presented herein.

## Jurisdiction

3.) The Court has jurisdiction over plaintiff's claims of violation of federal constitutional rights under 28 U.S.C §§ 1331(1) and 1343(a)(3)

4.) The Court has supplemental jurisdiction over plaintiff's state law tort claims under 28 U.S.C §1367(a)

## Venue

5.) The Northern District of Illinois is an appropriate venue under 28 U.S.C §§ 1391(b)(1) and 1391(b)(2) as it is the district in which at least one of the defendants resides and the district in which a substantial part of the events or omissions giving rise to the claims presented herein occurred.

-1-

## Plaintiff

6.) Plaintiff, Harlis Woods, was, at the time of the events described herein, a minor child involuntarily placed in the care and custody of the state through the Department of Children and Family Services, and owed a special duty of care from his governmental custodians. Plaintiff is currently a prisoner incarcerated at Pontiac Correctional Center. Plaintiff's address is 700 West Lincoln St., P.O Box 99, Pontiac, IL. 61764

## Defendants

7.) Defendant, Maryville Academy, is a corporation authorized by the laws of Illinois to board children upon its premises and within facilities owned and maintained by itself. Defendant is located at 1150 N River Rd, Des Plaines, IL 60016

8.) Defendant, Board of Directors for Maryville Academy in 1995, was, at the time of the events described herein, legally responsible for carrying out the functions and operations of Maryville Academy, and legally responsible for the health welfare and safety of the children placed in their care, as well as legally responsible for determining the policies, both written and unwritten, of Maryville Academy. Defendants last known address was 1150 N River Rd, Des Plaines, IL 60016

9.) Defendant, Rev. David P. Ryan, was, at the time of the events described herein, an executive officer of Maryville Academy and legally responsible for carrying out the functions and operations of Maryville Academy. Defendant's last known address was 1150 N. River Rd, Des Plaines, IL 60016

10.) Defendant, Brian Lewis, was, at the time of the events described herein, the senior manager of a housing unit within Maryville Academy and legally responsible for the daily operations of that housing unit as well as the security and supervision of children housed within the Lewis Home of Maryville Academy. Defendants last known address was 1150 N River Rd, Des Plaines, IL 60016

11.) Defendant, Jann Jameson, was, at the time of the events described herein, an employee of Maryville Academy within the Lewis Home, and legally responsible for the supervision and safety of the children housed within the Lewis Home of Maryville Academy. Defendants last known address was 1150 N River Rd, Des Plaines, IL 60016

-2-

12.) Defendant, Marshall Klein, was, at the time of the events described herein, a social worker employed with the Department of Children and Family Services to ensure plaintiffs' health, welfare, and safety. Defendants last known address was 406 E. Monroe, Springfield, IL. 62701

13.) Defendant, Director of D.C.F.S in 1995, was, at the time of the events described herein, legally responsible for the health, welfare, and safety of children in the care and custody of the Department of Children and Family Services, and authorized by the laws of Illinois to administer laws, rules, regulations and programs relating to protective services for children, foster care, and residential group homes, and responsible for determining the policies, both written and unwritten, of the Department of Children and Family Services. Defendants last known address is 406 E. Monroe, Springfield, IL. 62701. Defendants name is unknown

14.) At the time of the events described herein, each defendant acted under color of state law and owed plaintiff a special duty of care due to the nature of his involuntary wardship in state custody.

15.) Each defendant is sued jointly and severally in their individual capacities

16.) Plaintiff demands trial by jury

## Statement of Facts

17.) In about March of 1991, plaintiff, Harlis Woods, then a seven year old minor child, was removed from the care and custody of his biological mother due to severe physical abuse being inflicted by her upon plaintiff.

18.) In about March of 1992, plaintiff was adjudicated a ward of the state and placed in the care of the Department of Children and Family Services.

19.) In about October of 1995, plaintiff ran away from a foster home where he had been placed in Rock Island, IL. After spending approximately a month or two in an emergency shelter on Montrose Avenue, placement was secured for plaintiff at Maryville Academy in Des Plaines, IL in about December of 1995.

20.) Prior to plaintiffs placement at Maryville Academy, there had been reports of numerous incidences of abuse, neglect, and molestation occurring at Maryville Academy due to a lack of proper supervision being provided. These incidences of abuse and molestation were known to defendants: Board of Directors for Maryville Academy in 1995, Rev. David P. Ryan,

-3-

Brian Lewis, Jann Jameson, Marshall Klein, and Director of D.C.F.S in 1995 through the normal course of employment and discharge of their duties.

21.) The combination of numerous incidences of abuse, lack of proper supervision from staff at Maryville Academy, and an absence of appropriate corrective measures being taken to prevent the growing culture of abuse within Maryville Academy, created an environment where there existed a pervasive risk of harm to children being placed at Maryville Academy of being abused or molested.

22.) Defendant, Director of D.C.F.S in 1995, had actual and constructive knowledge of the pervasive risk of harm toward children that existed within Maryville Academy. Despite this knowledge defendant continued to place children into the custody and care of Maryville Academy, deliberately indifferent to the pervasive risk of injury and harm to which they were being abandoned.

23.) Defendant, Marshall Klein, had actual and constructive knowledge of the pervasive risk of harm that existed within Maryville Academy prior to placing plaintiff at Maryville Academy. Defendant exhibited deliberate indifference to that pervasive risk of harm and placed plaintiff into an environment where there existed a known risk of harm in the form of being abused or molested.

24.) Defendants, Maryville Academy, Board of Directors for Maryville Academy in 1995, and Brian Lewis, implemented, instituted, and perpetuated a policy that existed within Maryville Academy wherein children were placed within the premises of Maryville Academy despite there existing at Maryville Academy a culture of abuse and molestation that was general knowledge and yet little was done to prevent the abuses and molestations from occurring.

25.) There also existed within Maryville Academy, an unwritten but thriving policy of discouraging the reporting of abuse or molestation within Maryville Academy and even actively preventing victims of abuse and molestation from coming forward with threats and physical violence being used to coerce victims of sexual abuse from coming forward in a meaningful way.

-4-

26.) Plaintiff was placed within Maryville Academy in about December of 1995.

27.) Almost immediately plaintiff began to have problems with another youth that was placed in Maryville's Lewis Home prior to plaintiff's arrival. This other boy J.A (a minor) repeatedly antagonized plaintiff and started picking fights when staff were not present and supervising, which was often.

28.) Plaintiff made it a point to report this bully behavior to Defendant Jann Jameson, who was employed with Maryville Academy and assigned to supervise the children housed within Lewis Home of Maryville Academy.

29.) Defendant Jameson told plaintiff that it was time to "man up" now and he'd have to learn to fight for himself. Defendant Jameson did nothing to curtail the antagonizing behavior of J.A towards plaintiff. Instead, he actively encouraged the two youths to engage in physical altercations in the communal bathroom area while Defendant Jameson and other staff and residents watched.

30.) This was a common practice and there were often physical altercations allowed between residents so they could "get the beef out", or resolve their animosities.

31.) The other youth was older than plaintiff and considerably a more skilled fighter. On multiple occasions he started fights with plaintiff for no other purpose than to prove that he was the superior fighter.

32.) After plaintiff had been in Maryville Academy for about two months, and had lost multiple fights with J.A, plaintiff was desperate to end the physical and psychological torment being inflicted upon him.

33.) In an effort to stop the abuses he was suffering plaintiff spoke to Defendant Rev. David P. Ryan when Defendant Ryan was walking the Maryville Campus visiting different areas of the campus.

34.) Plaintiff was told by Defendant Ryan that he would look into the matter. To plaintiff's knowledge, nothing was ever done by Defendant Ryan regarding this matter.

35.) Plaintiff also made complaints to the senior manager of the housing unit where plaintiff was confined, Lewis Home, which

- 5 -

was Defendant Brian Lewis.

36.) Defendant Lewis spoke to plaintiff and J.A at the same time. He told J.A that plaintiff was complaining that J.A was picking on him. J.A denied the accusation. Defendant Lewis told both youth he didn't want to hear any more about the two of them having any other trouble.

37.) A few days after that incident J.A cornered plaintiff in a back room of Lewis' Home. He began threatening plaintiff and told him he was going to "kick his ass." Terrified, plaintiff tried to curl up and absorb the blows being delivered by both hands and feet. J.A told plaintiff to fight. When plaintiff would not fight J.A told plaintiff if he wouldn't fight, then he'd be J.A's "bitch."

38.) J.A proceeded to perform oral sex upon plaintiff and forced plaintiff to reciprocate the act.

39.) Over the course of the next couple of weeks this happened at least four to six times where J.A cornered plaintiff and forced him to engage in various acts of fellatio, either as performed upon his person or being made to perform the act upon J.A.

40.) Plaintiff finally worked up the courage to report these abuses and told first Defendant Vann Jameson.

41.) To plaintiff's knowledge, defendant Jameson did nothing concerning plaintiff's complaints

42.) Getting nowhere, plaintiff next said something to Defendant Brian Lewis. Defendant Lewis became visibly upset and told plaintiff to go to his room. To plaintiff's knowledge, defendant Lewis took no action concerning plaintiff's complaint.

43.) About a week after telling Defendant Lewis what was transpiring, plaintiff again seen Defendant David P. Ryan in the recreation building near the area where there was an indoor golf area.

44.) Plaintiff began crying and explained to Defendant Ryan what he had been going through. Defendant Ryan again told plaintiff that he would look into it. To plaintiff's knowledge Defendant Ryan took no action concerning plaintiff's complaint

45.) Not long afterward plaintiff was again cornered by J.A. This time J.A forcibly removed plaintiff's pants and placed a finger inside of plaintiff's anus. J.A had a latex glove on his hand at the time and thought his actions were

-6-

numerous.

46.) Plaintiff reported this incident immediately to Defendant Jann Jameson. Defendant Jameson spoke to Defendant Lewis. Defendant Lewis came and spoke with plaintiff at which time plaintiff explained what had happened. Defendant Lewis told plaintiff he wouldn't have to worry about it. They'd "make sure he stay[ed] away" from plaintiff.

47.) Defendant Jameson wrote up a report falsely stating that plaintiff anally penetrated himself with a latex glove. This was done to actively discredit plaintiff if the true nature of his injuries disclosed and the abuses he had endured discovered.

48.) Plaintiff didn't have any further problems with J.A. after that incident.

49.) Plaintiff was transferred to another placement, Allendale Association, in about May of 1996.

50.) In the years that followed plaintiff was shuttled around from placement to placement within the child welfare system, suffering additional abuses and indignities at other placements that are not subject to the instant action.

51.) Plaintiff's psychological, mental, and emotional state deteriorated as a result of the abuses suffered while at Maryville Academy. Plaintiff exhibited increasingly anti-social and delinquent behavior stemming from and proximately caused by the trauma inflicted upon him while in Maryville Academy and the indifference to his suffering.

52.) At the age of 15 plaintiff was arrested for aggravated vehicular hijacking. He was subsequently convicted and sentenced to serve a term of 7 years as an adult.

53.) At sixteen, the Department of Children and Family Services abandoned plaintiff to his own devises by terminating its guardianship

54.) While incarcerated plaintiff's psychological, emotional, and mental condition significantly deteriorated further while plaintiff was serving an extended solitary confinement sentence for a disciplinary infraction within the Illinois Department of Corrections in early 2001 while plaintiff was a minor of seventeen years.

55.) The psychologically adverse effect of extended solitary confinement combined with the accumulation of years of psychological, emotional, mental, and sexual trauma endured while a ward of the state child welfare system caused plaintiff to experience a

-7-

psychotic disassociative episode while incarcerated at Western Correctional Center in Mt. Sterling, IL in 2001 while plaintiff was a seventeen year old minor.

56.) Plaintiff's condition was well documented by mental health professionals at the time and consisted of plaintiff being alternatively catatonic and unresponsive, to highly agitated and suicidal - attempting to bite through the veins in his wrist.

57.) Plaintiff's condition was of such severity that he was placed in four point restraints to prevent further self-harm.

58.) Plaintiff was thereafter transferred to the psychiatric unit of the Illinois Department of Corrections in Dixon Correctional Center where he recovered from his disassociative episode but retained no conscious memory of the abuses suffered at Maryville Academy and his futile pleas for intervention to his governmental custodians.

59.) These memories had been suppressed and repressed from plaintiff's conscious memory during his psychotic disassociative episode occurring in 2001 when plaintiff was seventeen years old.

60.) Memories of additional abuses suffered at other placements were also suppressed and repressed from plaintiff's conscious memory at this time, yet do not form the basis of the claims in this action.

61.) Plaintiff did retain the memory of yet other incidences of abuse occurring at other times in his life, those incidences formed the basis of plaintiff's claims in previous litigation and are not subject to the claims of this action against the instant defendants.

62.) Plaintiff is not a mental health expert and offers no explanation as to why or how certain memories are suppressed and repressed while others are not.

63.) For years plaintiff lived without knowledge of the facts presented herein in regards to the incidences of abuse endured within Maryville Academy and plaintiff's repeated attempts to seek intervention from his governmental custodians, as well as the indifference towards these abuses by the defendants of this action.

64.) After being released from prison at twenty, plaintiff continued to deteriorate emotionally, mentally, and psychologically, unable to overcome the traumas he had endured.

65.) Unfortunately, plaintiff did not have the emotional, mental, moral, or psychological fortitude to overcome his traumas and

-8-

transgressed from abused to abuser, being charged and subsequently convicted of aggravated criminal sexual assault in 2005-2006

66.) While incarcerated on these charges plaintiff began to make attempts to become a better person, realizing that his own character and behaviors needed work if he was to return to society and live a meaningful life with the precious few years he would have after his release.

67.) Plaintiff understood the relationship between the incidences of abuse in his life that he had always retained a conscious memory of and his emotional and psychologically damaged condition. He began attending regular therapy sessions within the prison to address these issues

68.) At the recommendation of the therapist, plaintiff began trying to write out a memoir of his life experiences in an effort to aid others in understanding his shortcomings and failures in life and not following a similar path if they had suffered similar indignities

69.) During this time, in about May-June of 2017, while working on trying to write out his life story, plaintiff began to experience the emergence of suppressed and repressed memories related to the abuses and indignities suffered at Maryville Academy and the indifference to such abuse by the defendants, as set forth herein.

70.) Plaintiff has also experienced the emergence of previously suppressed and repressed memories in relation to indignities and abuses suffered while in other institutional and placement settings. These other memories do not form the basis of the claims presented herein.

71.) Plaintiff immediately began to seek the assistance of a mental health professional upon the emergence of these previously suppressed and repressed memories to aid him in processing the traumatic and unsettling nature of these memories.

## Tolling of the Statute of Limitations

72.) Plaintiff does not contest that the limitation period within which to bring a cause of action in a 42 U.S.C §1983 claim is two years from the date of accrual

73.) Plaintiff invokes the common law discovery rule to set the date of such accrual at some time in May-June of 2017, when plaintiff began to experience the emergence of memories that had been suppressed and repressed in 2001 when plaintiff was a minor

-9-

child of seventeen years and under the age of legal majority

74.) Understanding that he had knowledge sufficient to stir inquiry, plaintiff has prepared his claims against the instant defendants with due haste upon the emergence of his suppressed and repressed memories and thus, the time of accrual

## Causes of Action

75.) Plaintiff realleges and incorporates by reference paragraphs #1-74 of this Complaint

## Federal Claims
### Count 1: Failure to Protect

76.) Defendants; Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Marshall Klein; Brian Lewis; Jann Jameson; and Director of D.C.F.S in 1995; owed plaintiff a duty to protect him from foreseeable harm and a pervasive risk of injury.

77.) Defendants, jointly and severally, by their acts and/or omissions as described herein, failed to protect plaintiff from harm that was foreseeable in the form of sexual abuse and molestation, causing plaintiff to be injured in that he was sexually abused and molested multiple times, and as a result plaintiff continues to suffer permanent emotional and psychological damage, an unstable family environment, and a permanent impairment of his earning capacity

### Count 2: Violation of Substantive Due Process

78.) Defendants; Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Marshall Klein; Brian Lewis; Jann Jameson; and Director of D.C.F.S in 1995; owed plaintiff a duty to keep him free from harm and provide him a safe environment due to the involuntary nature of his wardship and the special relationship that existed between plaintiff and defendants as a result of plaintiffs involuntary wardship into government custody.

79.) Defendants, jointly and severally, by their acts and/or omissions as described herein, violated plaintiffs substantive due process rights to be free from the infliction of unnecessary pain and suffering while in state custody, contrary to clearly established federal law.

-10-

## State Claims

### Count 3: Respondeat Superior / Vicarious Liability

80.) Defendants, Maryville Academy and Board of Directors for Maryville Academy in 1995, had a duty to ensure that its agents Rev. David P. Ryan, Jann Jameson, and Brian Lewis were properly trained, supervised, and that they complied with state and federal law when dealing with state wards.

81.) Defendants, Maryville Academy and Board of Directors for Maryville Academy in 1995, are responsible for the acts and omissions of its agents, as well as the policies, written and unwritten, instituted by Maryville Academy and Board of Directors for Maryville Academy in 1995, and the acts and omissions of its agents as described herein.

### Count 4: Negligence

82.) Defendants: Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Brian Lewis; Jann Jameson; Marshall Klein; and Director of D.C.F.S in 1995, owed plaintiff a common law duty to protect him from harm and to provide him safe and secure living conditions free from the infliction of unnecessary pain and suffering and breached these duties by their acts and omissions as described herein, and by their acts or omissions allowed plaintiff to be sexually abused and molested when such harm was foreseeable and the defendants were, jointly and severally, in a position to take corrective action to remedy the pervasive risk of harm that existed at Maryville Academy in the form of a culture of abuse and molestation.

### Count 5: Premise Liability

83.) Defendants: Maryville Academy; and Board of Directors for Maryville Academy in 1995, had a duty to ensure that the facilities and the premises of those facilities, were safe and free from foreseeable risks of substantial harm. Having been put on actual and constructive notice of the substantial risk of harm existing at Maryville Academy in the form of a culture of abuse and molestation, defendants breached their duty and, through their policies, written and unwritten, allowed plaintiff to be placed into an environment where there existed a pervasive risk of harm. By their acts and omissions plaintiff was injured in that he was abused and molested upon the premises of Maryville Academy and as a result continues to suffer permanent emotional and psychological damage, an unstable family environment, and a permanent impairment of

-11-

his earning capacity.

### Count 6: Intentional Infliction of Emotional Distress

84.) Defendants: Rev. David P. Ryan, Brian Lewis, and Jann Jameson, by their acts and omissions described herein, engaged in conduct that was extreme, outrageous, and shocking to the conscience in that by their silence and inaction on plaintiff's repeated claims of abuse and molestation they abandoned plaintiff to being repeatedly abused, assaulted, and molested when such harm was easily preventable. Defendants should have known that their conduct would cause plaintiff severe emotional distress. Plaintiff did in fact suffer severe emotional distress in being subjected to repeated and prolonged incidences of abuse and molestation at Maryville Academy well after he had notified his governmental custodians. As a result plaintiff continues to suffer permanent emotional and psychological damage, an unstable family environment, and a permanent impairment of his earning capacity.

### Prayer for Relief

85.) Plaintiff realleges and incorporates by reference paragraphs #1-84 of this Complaint.

86.) Wherefore, for the foregoing reasons, plaintiff respectfully requests this Honorable Court enter judgment grant plaintiff:

87.) A declaration that the acts and omissions described herein violated plaintiff's rights under Illinois state tort laws.

88.) A declaration that the acts and omissions described herein violated plaintiff's rights under the United States Constitution.

89.) Compensatory damages against defendants: Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Brian Lewis; Jann Jameson; Marshall Klein; and Director of D.C.F.S. in 1995, in the amount of $8,000,000.00 (eight million dollars) for the violation of plaintiff's state and federal rights, by the acts and omissions described herein, and the mental, emotional and physical trauma inflicted upon plaintiff, such trauma causing permanent emotional and psychological damage which manifests itself in character disorders, delinquent and criminal behavior, sociopathic tendencies, psychopathic tendencies, sexual deviance, loss of esteem, severe emotional distress, pain and suffering, an unstable family environment, and a permanent impairment of his earning capacity.

-12-

90.) Punitive damages against defendants: Maryville Academy; Board of Directors for Maryville Academy in 1995; Rev. David P. Ryan; Brian Lewis; Jann Jameson; Marshall Klein; and Director of D.C.F.S in 1995; in the amount of $12,000,000.00 (twelve million dollars) to punish defendants for their flagrant disregard of plaintiff's rights and to act as a deterent from such conduct in the future. The entire sum of such punitive damages awarded being assigned to the victims of plaintiffs crimes and local sexual violence prevention centers as this Honorable Court deems just.

91.) Reasonable attorney fees and cost of suit; and

92.) Such other relief as this Honorable Court deems necessary and just.

Respectfully Submitted,
/s/ _____ 11/7/17
Harlis Woods-R00051
P.O Box 99
Pontiac, IL 61764
Plaintiff Pro Se

Verification

Pursuant to 28 U.S.C §1746, I, Harlis Woods, verify, under penalty of perjury, that the foregoing is true and correct to the best of my understanding.

Executed on this 7th day of November, 2017 at Pontiac, IL
/s/ _____

- 13 -

IN THE
__United States District Court__
__for the Northern District of Illinois__

__Harlis Woods__
Plaintiff/Petitioner

Vs.

__Maryville Academy, et al__
Defendant/Respondent

No._____

## PROOF/CERTIFICATE OF SERVICE

TO: _Prisoner Correspondent_
_Clerk of the District Court_
_219 S. Dearborn Street_
_Chicago, IL 60604_

TO: _____

PLEASE TAKE NOTICE that on _____, 200___, I placed the documents listed below in the institutional mail at _____ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service : _Complaint; Motion to proceed in forma pauperis; motion for appointment of counsel_

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge and belief.

DATED: __11/7/17__

/s/ _____
Name: __Harlis Woods__
IDOC No. __R00051__
__Pontiac__ Correctional Ctr.
POB __99__
__Pontiac__, IL __61764__